# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN SCHELLER, | ) 1:08cv0798 OWW DLB |
| | ) |
| | ) |
| Plaintiff, | ) ORDER DENYING PLAINTIFF'S |
| | ) MOTION FOR REMAND |
| v. | ) (Document 11) |
| | ) |
| AMERICAN MEDICAL | ) ORDER DENYING DEFENDANTS' MOTION |
| RESPONSE, INC., et al., | ) TO STRIKE AS MOOT |
| | ) (Document 25) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

On July 28, 2008, Plaintiff Karen Scheller ("Plaintiff") filed the instant motion to remand this action to the Stanislaus County Superior Court. The motion was heard before the Honorable Dennis L. Beck, United States Magistrate Judge, on September 12, 2008. Brett Dickerson appeared on behalf of Plaintiff. Jennifer Achtert appeared on behalf of Defendants American Medical Response, Inc. ("AMR") and Cindy Woolston (collectively "Defendants").

## PROCEDURAL BACKGROUND

Plaintiff filed this discrimination action in the Stanislaus Superior Court on February 20, 2008. Her First Amended Complaint ("FAC"), filed on March 7, 2008, alleges (1) disability discrimination under the California Fair Employment and Housing Act ("FEHA"); (2) age discrimination under FEHA; (3) tortious termination in violation of public policy; (4) retaliation; (5) breach of employment contract; (6) breach of the implied covenant of good faith and fair dealing; and (7) intentional interference with economic relationship against Defendant Woolston.

1

The FAC was served on Defendant Woolston on March 21, 2008, through substitute service on her assistant.  Defendant AMR was served on March 13, 2008, by mailing the documents to its agent for service of process.[1]

Defendants answered the FAC on June 4, 2008.

On June 6, 2008, Defendants removed the action to this Court based on preemption by Section 301 of the Labor Management Relations Act ("LMRA"), 28 U.S.C. § 185, of the Fifth, Sixth and Seventh Causes of Action.  In its notice, Defendants state that the notice was filed within thirty (30) days of service, contending that AMR was served on May 13, 2008. Defendants did not believe that Defendant Woolston had been properly served, although she joined in the notice of removal.

Plaintiff filed the instant motion for remand on July 28, 2008, arguing that the allegations in the FAC are based on violations of state law, rather than any term or condition in the Collective Bargaining Agreement ("CBA").

Defendants opposed the motion on August 29, 2008.

Plaintiff filed her reply on September 5, 2008.

On September 8, 2008, Defendants filed a motion to strike portions of the reply.

## **FACTUAL BACKGROUND**

According to the FAC, AMR is a Delaware corporation doing business in Modesto. Plaintiff resides in Stanislaus County.  Defendant Woolston resides in Sacramento County and is sued individually and in her capacity as a supervisory employee of AMR.

Plaintiff was hired by AMR's predecessor as an EMT in 1985.  She became a part-time employee of AMR in 1995 and a full-time employee in 1999.  In January 2005, Plaintiff suffered an on-the-job shoulder injury and was placed on temporary disability.  From the date of her injury through the date of her surgery, Plaintiff was cleared for light duty, though it was not offered to her.  In June 2005, Plaintiff underwent surgery to correct the dislocation and it was discovered that her injury was very severe.

---

[1] Issues relating to service will be discussed below.

On March 3, 2006, Plaintiff reported back to work and asked to discuss accommodations by requesting a meeting with Defendant Woolston and others.  Plaintiff alleges that rather than discussing accommodations, AMR supervisors "summarily advised her that she was to go home as there was no work for her, nor were there any accommodations available."  FAC, ¶ 7.  Terri Alred, the head of Human Resources, advised Plaintiff during a telephone conversation that she needed to find a new job as she was now "too old and too much of a liability."  FAC, ¶ 7.  In another conversation with Quality Assurance Manager Mike Corbin, Plaintiff was advised that she was now a "worker's comp nightmare."  FAC, ¶ 7.

Prior to her termination, Plaintiff complained to Defendant Woolston that AMR refused to engage her in the legally required interactive process.  Woolston had become aware that Plaintiff had sought legal counsel.  On March 11, 2006, Plaintiff met with Defendant Woolston and others.  Woolston "chastised" Plaintiff for having sought legal counsel and told her that since she had done so, Woolston could not discuss any employment matters, including accommodations for disability.  On March 16, 2006, her employment was terminated.

As to her employment, she alleges that she had received favorable evaluations, ratings and recognition, as well as numerous representations regarding the "positive nature of her future employment."  FAC, ¶ 43.  She alleges that she had an employment contract that prohibited termination without cause.  She further alleges that in March 2006, Defendant Woolston began a malicious and intentional effort to induce AMR to breach its contract with Plaintiff.  She contends that Defendant Woolston acted in part within the course and scope of her employment, but was also, "at least in part, serving a purpose of her own in carrying out the above conduct against Plaintiff and was motivated, at least in part, by malice and ill will towards Plaintiff."  FAC, ¶ 38.

Based on this set of facts, Plaintiff alleges causes of action against Defendant AMR for (1) disability discrimination (refusal to engage in the interactive process) in violation of FEHA; (2) age discrimination in violation of FEHA; (3) tortious termination in violation of public policy; (4) retaliation; (5) breach of employment contract; and (6) breach of the implied covenant

1  of good faith and fair dealing.  The Seventh Cause of Action for intentional interference with a

2  contractual relationship is alleged only against Defendant Woolston.

3  **LEGAL STANDARDS**

4  A.   Removal Jurisdiction

5  _____By statute "any civil action brought in a State court of which the district courts of the

6  United States have original jurisdiction, may be removed by the defendant or the defendants, to

7  the district court of the United States for the district and division embracing the place where such

8  action is pending."  28 U.S.C. § 1441(a).  The party seeking to invoke federal jurisdiction, bears

9  the burden of establishing jurisdiction.  *See Indus. Tectonics, Inc. v. Aero Alloy,* 912 F. 2d 1090,

10  1092 (9th Cir. 1990).

11  Removability is determined at the time the notice of removal was filed.  *Pullman Co. v.*

12  *Jenkins,* 305 U.S. 534, 537 (1934).  If the case was removable at that time, plaintiff cannot

13  thereafter oust the federal court of jurisdiction by voluntarily changing the case so as to destroy

14  the ground upon which removal was based.  *Hill v. Rolleri,* 615 F.2d 886, 889 (9th Cir. 1980).

15  When the federal claims have dropped out of the lawsuit in its early stages and only state law

16  claims remain, it may be an abuse of discretion for the federal district court to retain the case.

17  *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343 (1988).

18  B.   Preemption Under Section 301

19  Section 301(a) of the LMRA establishes federal jurisdiction for "[s]uits for violation of

20  contracts between an employer and a labor organization."  29 U.S.C. § 185(a).  Federal law

21  governs suits for breach of a CBA under the LMRA, which therefore completely preempts any

22  state cause of action for breach thereof.  *Franchise Tax Bd. Of State of Cal. v. Construction*

23  *Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 23 (1983); *Cook v. Lindsay Olive Growers,* 911

24  F.2d 233, 237 (9th Cir.1990).  "Even suits based on torts, rather than on breach of collective

25  bargaining agreements, are governed by federal law if their evaluation is 'inextricably

26  intertwined with consideration of the terms of [a] labor contract.'"  *Miller v. AT & T Network*

27  *Systems,* 850 F.2d 543, 545 (9th Cir.1988) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S.

28  202, 213 (1985)).

4

The LMRA does not, however, preempt the application of a state law remedy when the "factual inquiry [under the state law] does not turn on the meaning of any provision of a collective bargaining agreement." *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988).[2] Thus, claims that only "tangentially involv[e]" a provision of a collective-bargaining agreement are not preempted by section 301 . . . Nor are causes of action which assert "'nonnegotiable state-law rights . . . independent of any right established by contract.'" *Miller v. AT & T Network Sys., supra*, 850 F.2d at 546.

In *Miller, 850 F.2d at 548*, the court articulated the following analysis for determining whether claims based on "nonegotiable" and "independent" state law rights are subject to preemption:

> The court must consider (1) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract. A state law will be preempted only if the answer to the first question is 'yes,' and the answer to either the second or third is 'no.'

Following this body of authority, the Ninth Circuit has explicitly recognized that a claim is not preempted by Section 301 if it merely requires reference to, as opposed to interpretation of, the provisions of a CBA. *See, e.g., Beals v. Kiewit Pacific Co., Inc.*, 114 F.3d 892, 895 (9th Cir.1997); *Associated Builders & Contractors, Inc. v. Local 302 Int'l Brotherhood of Electrical Workers*, 109 F.3d 1353, 1357 (9th Cir.1997); *Ramirez v. Fox Television Station, Inc.,* 998 F.2d 743, 749 (9th Cir.1993) ("Fox errs in equating 'reference' with 'interpret'").

The Ninth Circuit has also held on several occasions that the LMRA does not preempt discrimination claims under the FEHA in that the rights created thereunder are non-negotiable and independent of rights under a CBA. *See Ramirez v. Fox Television Station, Inc., supra*, (finding no preemption of a FEHA national origin discrimination claim); *Cook v. Lindsay Olive*

---

[2] The issue in *Lingle* was "whether an employee covered by a collective-bargaining agreement that provides her with a contractual remedy for discharge without just cause may enforce her state law remedy for retaliatory discharge." *Lingle*, 486 U.S. at 401. Reversing the court of appeals' finding of preemption, the Court noted that the elements constituting retaliatory discharge under Illinois law pertained to the conduct of the employee and the conduct and motivation of the employer. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge; this purely factual inquiry does not turn on the meaning of any provision of a collective-bargaining agreement. *Id*. at 407.

1  *Growers*, 911 F.2d 233, 240 (9th Cir.1990) (finding no preemption of a FEHA religious

2  discrimination claim); *Jackson v. Southern Cal. Gas Co.*, 881 F.2d 638, 644 (9th Cir.1989)

3  (finding no preemption of a FEHA racial discrimination claim); *Chmiel v. Beverly Wilshire Hotel*

4  *Co.*, 873 F.2d 1283, 1286 (9th Cir.1989) (finding no preemption of a FEHA age discrimination

5  claim); *Ackerman v. Western Elec. Co., Inc.*, 860 F.2d 1514, 1517 (9th Cir. 1988) (finding no

6  preemption of disability discrimination claim under FEHA, despite a broad provision in the CBA

7  prohibiting discriminatory discharge, where resolution of state law claim did not require

8  reference to terms of the CBA).

9       Recognizing the lack of a black and white rule, the Ninth Circuit has commented,

10      The demarcation between preempted claims and those that survive § 301's reach is not,
   however, a line that lends itself to analytical precision.  As the Supreme Court

11  acknowledged in *Livadas*, "[T]he Courts of Appeals have not been entirely uniform in
   their understanding and application of the principles set down in *Lingle* and

12  [*Allis-Chalmers* ]."  *Id.* at 124 n. 18, 114 S.Ct. 2068.  And little wonder.  "Substantial
   dependence" on a CBA is an inexact concept, turning on the specific facts of each case,

13  and the distinction between "looking to" a CBA and "interpreting" it is not always clear
   or amenable to a bright-line test.  See *Balcorta v. Twentieth Century-Fox Film Corp.*, 208

14  F.3d 1102, 1108-09 (9th Cir.2000); *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743,
   748 (9th Cir.1993).  Nevertheless, the interpretive principles the Supreme Court has

15  articulated help guide us through the analytical thicket.

16  *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 690 (9th Cir. 2001).

17  **DISCUSSION**

18  A.   <u>Timeliness of Notice of Remand</u>

19      In Plaintiff's reply, she contends, for the first time, that Defendants' notice of removal

20  was untimely.  28 U.S.C. § 1446(b).  Although arguments raised for the first time in a reply are

21  generally not considered, the Court will address Plaintiff's argument because it is without merit.

22  Defendants' motion to strike this portion of the reply is therefore DENIED AS MOOT.

23      Plaintiff's argument is based on her belief that while Defendants' current legal counsel

24  did not receive notice of the FAC until May 13, 2008, Defendants' *agents* (AMR's general legal

25  counsel and CSC-Lawyers Incorporating Service, AMR's listed agent for service of process)

26  were served with the FAC in March 2008.  However, as the Court explained at the hearing,

27  service on an attorney does not necessarily equate to service on a defendant.  More importantly,

28  though, service by mail with a request for acknowledgment is not effective until a response is

6

1  received.  Fed.R.Civ.Proc. 4(d).  There is no indication that a response was received from the

2  March 2008 service.

3        Therefore, Plaintiff's argument that the notice of removal was timely filed is without

4  merit.

5  B.     Preemption

6        Plaintiff's sole argument in support of remand is based on her characterization of her

7  claims as involving only state law.  She contends that the core of her complaint is based on

8  Defendants' FEHA violations and that it is axiomatic that a violation of FEHA would be a

9  violation of the CBA.  According to Plaintiff, therefore, an interpretation of the CBA is not

10  necessary because the violation is obvious.

11        However, that a violation of the CBA may be obvious does not prohibit preemption.  In

12  this action, Plaintiff alleged specific causes of action based on the CBA.  Although she did not

13  cite the CBA in her complaint, the CBA is the basis of her Fifth, Sixth and Seventh causes of

14  action.  Plaintiff has therefore chosen to litigate claims based on the CBA and cannot now avoid

15  the preemptive effects based on that decision.  The subsequent interpretation of the CBA may

16  indeed be simple and straightforward, but it is an interpretation nonetheless.

17        Accordingly, because the resolution of Plaintiff's claim will require interpretation of the

18  CBA, the Court finds that Plaintiff's claims are preempted.  "In enacting § 301 Congress

19  intended doctrines of federal labor law uniformly to prevail over inconsistent local rules."

20  *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962).  The Court finds no reason to deviate

21  from this principle.  Plaintiff's motion to remand is DENIED.

22

23        IT IS SO ORDERED.

24  **Dated:   September 15, 2008             /s/ Dennis L. Beck**
                                        UNITED STATES MAGISTRATE JUDGE

25

26

27

28

                                        7